UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DMITRY PITERMAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>GOLD COAST EXOTIC IMPORTS LLC, et al.,<br><br>　　　　　Defendants. | Case No.  5:20-cv-07724-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL**<br><br>Re: Dkt. Nos. 25, 30 |

Plaintiff Dmitry Piterman ("Plaintiff") brought this action against Defendants Gold Coast Exotic Imports LLC ("Gold Coast"), Joseph Perillo, Rolls-Royce Motor Cars NA, LLC ("Rolls-Royce"), Rolls-Royce Financial Services, LLC ("Rolls-Royce FS"), and BMW Financial Services NA, LLC ("BMW FS"), among others, alleging fraud, unfair business practices, breach of contract, and related claims arising out of his purchase of a 2018 Rolls Royce Dawn.  Before the Court are (1) Defendants Gold Coast and Mr. Perillo's ("Gold Coast Defendants") Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Compel Arbitration (Dkt. No. 25, "Gold Coast Motion"); and (2) Defendants Rolls-Royce, Rolls-Royce FS, and BMW FS's ("Rolls-Royce Defendants") Motion For Order Compelling Arbitration and Staying Action (Dkt. No. 30, "Rolls-Royce Motion").

The Court took both motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons below, the Court GRANTS the Gold Coast Motion, GRANTS the Rolls-Royce Motion and COMPELS arbitration of this action.

**CASE NO.: 5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL

1

### I.  Background

Plaintiff is a resident of Monterey, California.  Dkt. No. 1, Complaint, ¶ 3; *see also* Declaration of Dmitry Piterman in Support of Plaintiff's Opposition to Defendants Gold Coast Exotic Imports LLC and Joseph Perillo's FRCP 12(B)(2) Motion to Dismiss ("Perillo Decl.") ¶ 3. In late September 2018, Plaintiff was in Europe conducting internet research in the hopes of buying a car when he discovered that Gold Coast (doing business as "Rolls Royce Motor Cars Gold Coast") was advertising for sale a 2018 Rolls Royce Dawn (the "Vehicle").  *Id.*  Plaintiff called the dealership and inquired about the Vehicle.  Soon thereafter, Plaintiff returned to California and continued to exchange emails with the Gold Coast personnel regarding his potential purchase of the Vehicle.  He requested additional photographs of the Vehicle and more information about its year, mileage, identification number and other features.  *Id*. at Ex. 2.  Gold Coast sent the requested information and also requested information back from Plaintiff so that it could complete a credit check.  *Id.*

On or about, October 11, 2018, Gold Coast sent a purchase and sale contract for the Vehicle to Plaintiff at his residence in California by Federal Express.  Plaintiff signed the contract in California and mailed back it to Defendants from California.  *See Id.* ¶ 4.  On or around October 20, 2018, the parties finalized an agreement by which Plaintiff would lease the Vehicle for $390,995.  Compl. ¶ 10.  The transaction was memorialized in a written Motor Vehicle Lease Agreement ("Lease Agreement").  *Id.*; *see* Declaration of Andrew K. Stefatos ("Stefatos Decl.") ¶ 3, Ex. 1.  At no point prior to executing the Lease Agreement did any Defendant disclose that the Vehicle had been in an accident, that the warranty had been commenced 8 months earlier, that the car did not have its original paint, that the car was not new, that the car was a "demo," or that the car was an "executive vehicle."  Compl. ¶ 11.

In May 2020, Plaintiff took the car to a Rolls-Royce dealer in Los Gatos for standard service work and because the paint appeared to be blistering.  *Id.* ¶ 12.  The Los Gatos dealership observed that the rear body panels, the rear bumper, and the gas cap filler were out of alignment due to torsion from an accident and that the car had been repainted.  *Id.*  Upon further

CASE NO.: **5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL

2

1   investigation, Plaintiff learned that almost the entire vehicle had been repainted with a poor quality

2   paint in a sub-standard fashion. *Id.* ¶ 15. Plaintiff demanded recission of the sales contract and

3   lease, and restitution of amounts paid by Plaintiff. *Id.* ¶ 13. Upon receipt of Plaintiff's demand,

4   Defendants told Plaintiff that the car had been in an accident but maintained that they were not

5   liable for the repairs under Illinois law. *Id.* ¶ 14. At no point prior to executing the Lease

6   Agreement did any Defendant disclose that the Vehicle had been in an accident, that the warranty

7   had been commenced 8 months earlier, that the car did not have its original paint, that the car was

8   not new, that the car was a "demo," or that the car was an "executive vehicle," which Plaintiff

9   later learned to be true. Compl. ¶ 11.

10   In or around September 2021, Plaintiff filed an arbitration demand with the AAA. Section

11   41 of the Lease Agreement contains an Arbitration Clause. Lease Agreement ¶ 41. The

12   Arbitration Clause is set forth in its own section and is titled (in capitalized, bold lettering),

13   "Arbitration Clause PLEASE REVIEW – IMPORTANT – AFFECTS MY LEGAL RIGHTS." *Id.*

14   The Arbitration Clause states in pertinent part:

> NOTICE: Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any Claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.
>
> Any claim or dispute whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between me and you or your employees, agents, successors or assigns, which arise out of or relate to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action or other mass action. I expressly waive any right I may have to arbitrate a class action. I may choose the following arbitration organization and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.adrforum.com), or any

28   **CASE NO.: 5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
3

organization that I may choose subject to your approval. I may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

*Id.* On September 21, 2020, the AAA sent a letter to Plaintiff and former counsel for Gold Coast, stating:

"Prior to the filing of this arbitration, the business failed to comply with the AAA's policies regarding consumer claims. Accordingly, we must decline to administer this claim and any other claims between Rolls Royce Gold Coast aka Gold Coast Exotic Imports LLC and its consumers at this time. These policies can be found on our web site, www.adr.org, in the Consumer Due Process Protocol ("Protocol") and the Consumer Arbitration Rules ("Consumer Rules"), including the Costs of Arbitration."

Gold Coast Motion at Ex. 3 ("AAA Letter"). The parties dispute when and the extent to which each of the Defendants were aware of Plaintiff's attempt to arbitrate or of the AAA's declination.

Plaintiff then filed the present action on November 2, 2020, alleging (1) breach of contract, (2) fraud, (3) breach of the implied covenant of good faith and fair dealing, (4) unfair business practices, and (5) rescission. The Rolls-Royce Defendants each filed an Answer. Dkt Nos. 8-10. After the deadline to answer passed, Plaintiff filed a Motion for Entry of Default against Gold Coast and Mr. Perillo and the Clerk of Court issued an Entry of Default as to those Defendants. Dkt. Nos. 23, 24. The same day that the Clerk entered default, the Gold Coast Defendants filed their Motion to Dismiss for Lack of Personal Jurisdiction; or, In the Alternative, To Compel Arbitration. Shortly thereafter, the Rolls-Royce Defendants also filed a Motion to Compel Arbitration.

## II. Gold Coast Defendants' Motion to Dismiss

The Gold Coast Defendants argue that this Court lacks personal jurisdiction over them because they are not residents of California and they do not have the requisite "minimum contacts" with California, such that subjecting them to personal jurisdiction in this Court would offend traditional notions of fair place and substantial justice. Defendants further argue, in the alternative, that the Court should compel arbitration pursuant to the Lease Agreement's arbitration clause. Because "[t]he district court must have personal jurisdiction over each individual third-party entity before compelling them to arbitrate," the Court first considers whether personal

**CASE NO.: 5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
4

jurisdiction exists over Defendants. *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)").

### A. Legal Standard

Under Federal Rule of Civil Procedure Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). In a diversity action, like this one, a court may exercise personal jurisdiction over a non-resident defendant if jurisdiction is proper under California's long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). Because California's long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution, the statutory and constitutional inquiry merge into a single due process test. *See* Cal. Civ. Proc. Code § 410.10.

"For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

Personal jurisdiction may be either general or specific. General personal jurisdiction exists when the defendant is "fairly regarded at home" in the jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017). Specific jurisdiction exists "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 51 (N.D. Cal. 2020) (citing *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit has established a three-prong test to

determine whether specific jurisdiction is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff does so, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

Under the first prong, a plaintiff must establish that the defendant either "purposefully availed" itself of the privileges of California or "purposefully directed" its activities toward California. The Ninth Circuit has explained that "in tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc.*, 647 F.3d at 1228 (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). "The 'effects' test, which is based on the Supreme Court's decision in [*Calder v. Jones*], requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc.*, 647 F.3d at 1228; citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

### B. Defendant Gold Coast

Gold Coast is an Illinois licensed motor vehicle dealer located in Illinois. Compl. ¶ 4. It has never been licensed nor qualified to do business in the State of California, nor sought to be licensed or qualified to do business in California. Declaration of Joseph J. Perillo ("Perillo Decl.") ¶ 2. The dealership has no physical location, operations, or employees in California and does not advertise in California. *Id.* ¶¶ 3-4. Plaintiff does not dispute these facts and does not raise any allegations or arguments related to general jurisdiction. Rather, Plaintiff argues that specific personal jurisdiction over Gold Coast is proper because Gold Coast conducts commercial activity on its website. Opp. at 4-5.

The Ninth Circuit utilizes a sliding scale when examining whether a website provides grounds for personal jurisdiction. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997). "At one end of the scale [are] active sites 'where a defendant clearly does business over the Internet' and 'enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet,' which support[s] jurisdiction." *Mavrix Photo, Inc.*, 647 F.3d at 1226 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). "At the other end [are] passive sites 'where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions,' and which do[es] not support jurisdiction." *Id.* at 1226–27 (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124). Under this analysis, the Court determines jurisdiction by examining the "level of interactivity and commercial nature of the exchange . . . that occurs on the Web site." *Id.* at 1227 (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124).

Plaintiff argues that Gold Coast does business on its website such that its website should be considered "active." In support of this argument, Plaintiff alleges that he first discovered the Vehicle by viewing it on Gold Coast's website. Dkt. No. 27-1, Declaration of Dmitry Piterman in Support of Plaintiff's Opposition to Defendants Gold Coast Exotic Imports LLC and Joseph Perillo's FRCP 12(B)(2) Motion to Dismiss ("Piterman Decl.") ¶ 3. He further alleges that he exchanged a number of email communications with Gold Coast regarding the details of the

CASE NO.: **5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
7

purchase. *Id.*; Opp. at 4. Specifically, Gold Coast sent Plaintiff a credit application by email and, in response to Plaintiff's requests, also sent photographs and information about the vehicle's year, mileage, vehicle identification number, and other features. Piterman Decl. ¶ 3. Plaintiff argues that these activities demonstrate "the interactive nature of Defendants' website where consumers like Plaintiff could use it for making purchases." Opp. at 4.

The Court does not find this argument persuasive. As an initial matter, the only part of the transaction that allegedly occurred on the website itself was Plaintiff's initial viewing of the vehicle listing, which occurred while Plaintiff was in Europe, not California. The Ninth Circuit has held that "merely advertising over the Internet is not sufficient to confer jurisdiction throughout the United States, even though the advertisement or website at issue may be viewed nationwide." *Boschetto v. Hansing*, 539 F.3d 1011, 1022 (9th Cir. 2008) (Rymer, J., concurring) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157–58 (9th Cir. 2006)).

The remainder of Plaintiff's interactions with Gold Coast allegedly occurred via telephone, email, or FedEx, outside of the confines of the website. Plaintiff does not raise any other allegations about business conducted on Gold Coast's website. In the absence of any allegations suggesting that Plaintiff's transaction occurred through the website or that Gold Coast uses its website to conduct business in California generally, the Court finds that Gold Coast's internet presence alone does not provide a basis for personal jurisdiction. *Cf. Zippo Mfg. Co.*, 952 F. Supp. at 1125–26 (finding that defendant's "electronic commerce with Pennsylvania residents" through its website constituted purposeful availment where defendant had contracted with thousands of Pennsylvania residents and several internet service providers).

Plaintiff next argues that personal jurisdiction exists based on Gold Coast's "purposeful direction" of the vehicle into California under the *Calder* test. *See Calder*, 465 U.S. 783. Plaintiffs argue that Gold Coast purposefully directed its conduct toward California by: (1) "distributing in California goods originating elsewhere in Illinois," (2) "generat[ing] numerous internet and email correspondences to Plaintiff in California in order to obtain Plaintiff's business, and thereafter . . . to finalize the subject transaction;" and (3) attempting to solicit new business

from Plaintiff after the transaction. Opp. at 7. Gold Coast argues that it did not direct any activities toward California and that the sale of a single vehicle to a California resident, without more, is not a sufficient basis for personal jurisdiction. Reply at 5; Motion at 5 (citing *Boschetto*, 539 F.3d 1011.

In *Boschetto*, the Ninth Circuit considered whether a Wisconsin-based auto dealer's sale of a vehicle through eBay provided sufficient minimum contacts to support personal jurisdiction in California. Just as in this case, the parties in *Boschetto* communicated by email to arrange the sale and delivery of the vehicle, and the buyer paid to have the vehicle shipped to California. The Ninth Circuit held that the dealer was not subject to personal jurisdiction, finding that "the lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California." *Id.* at 1017. The court went on to explain that "[t]he arrangement between [plaintiff] and [defendant] which is, at bottom, a contract for the sale of a good, is insufficient to have created a substantial connection with California" where the contract involved no ongoing obligations in California. *Id.*

The same is true in the present case. Gold Coast's "lone transaction" for the sale of the Vehicle to a California resident is not sufficient to create personal jurisdiction over Gold Coast in California. *See id.* ("we are guided by the Supreme Court's admonition that the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction") (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.")); *see also Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020) (explaining that "signing a single contract with a forum resident on behalf of a corporation would not subject a corporate officer to personal jurisdiction in a claim for breach of contract").

This is true even though the parties negotiated the deal through email while Plaintiff was physically in California. The *Boschetto* court also considered the exchange of email

CASE NO.: **5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
9

communications between the parties and did not find that it changed the personal jurisdiction analysis. In a concurring opinion, Judge Rymer explained that the defendant's sending an email to plaintiff in California was "not sufficient to subject him to personal jurisdiction there" even if defendant knew plaintiff was in California because "[i]t established only a limited contact, and [defendant] sent it because [plaintiff] won the auction, not because he was in California.") (citing *Burger King Corp.*, 471 U.S. at 474). Similarly, Gold Coast began communicating with Plaintiff while Plaintiff was not in California for the purpose of responding to Plaintiff's inquiries and finalizing the deal. The fact that Plaintiff at some point began receiving Gold Coast's emails in California does not indicate that Gold Coast directed its activities toward California.

Finally, Plaintiff argues that Gold Coast "continued to solicit his business" following the transaction. The only allegation or argument Plaintiff raises on this point is that a Gold Coast manager emailed Plaintiff a link for a 2020 Lamborghini Huracan EVO Roadster in October 2019. One isolated, unrelated email from Gold Coast to a resident of California is not sufficient to establish that Gold Coast "purposefully availed" itself of the privileges of California or "purposefully directed" its activities toward California.

Thus, the Court finds that Plaintiff failed to meet his burden of showing specific personal jurisdiction over Defendant Gold Coast.

### C. Defendant Perillo

Mr. Perillo is the manager and dealer operator of Gold Coast. Perillo Decl. ¶ 1. The parties largely do not distinguish Defendants Perillo and Gold Coast. Indeed, Plaintiff did not raise any arguments or allegations specific to Mr. Perillo in his Opposition. Courts, however, "do not impute a corporation's forum contacts to each of the corporation's employees." *Global Commodities Trading Group, Inc.*, 972 F.3d at 1109. Rather, "each party's 'contacts with the forum [s]tate must be assessed individually.'" *In re Boon Global Limited*, 923 F.3d at 651 (citing *Calder*, 465 U.S. at 790).

Plaintiff alleges Mr. Perillo is an "individual residing in Chicago, Illinois," and that he made knowing misrepresentations regarding the Vehicle. Compl. ¶ 23. In his Declaration,

CASE NO.: **5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
10

1  Plaintiff represents that "Gold Coast and Joe Perillo sent the purchase and sale contract for the
2  [Vehicle] to [Plaintiff] in California by Federal Express." Piterman Decl. ¶ 4. The Court finds
3  these allegations insufficient to establish personal jurisdiction over Mr. Perillo. *See S.H. Silver*
4  *Co. Inc. v. David Morris Int'l*, No. C 08-03550 CRB, 2008 WL 4058364 (N.D. Cal. Aug. 28,
5  2008) (finding that "numerous telephone calls . . . for the purpose of making arrangements for the
6  consignment of several jewelry pieces" along with wire transfers, were not sufficient to establish
7  personal jurisdiction in breach of contract suit).

The Court finds that Plaintiff has failed to allege any basis for personal jurisdiction against Defendant Gold Coast or Defendant Perillo. Therefore, the Motion to Dismiss is GRANTED. Because the Court grants the Gold Coast Defendants' Motion on personal jurisdiction grounds, it need not reach the Gold Coast Defendants' alternative request to compel arbitration.

### III. Rolls-Royce Defendants' Motion to Compel Arbitration

#### A. Legal Standard

The Federal Arbitration Act ("FAA") declares "that a written agreement to arbitrate . . . 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,'" and thereby establishes a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (quoting 9 U.S.C. § 2). Where parties enter into an arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, No. *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, No. 5:19-CV-00078-EJD, 2020 WL 5106851, at *15 (N.D. Cal. Aug. 31, 2020) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)).

"The Supreme Court has consistently recognized 'the emphatic federal policy in favor of arbitral dispute resolution,' a policy that 'applies with special force in the field of international commerce.'" *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (quoting

**CASE NO.: 5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985)). "California law, like federal law, favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97, 6 P.3d 669 (2000). Courts are required to resolve any doubt as to whether a dispute falls within an arbitration provision in favor of arbitration. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).

### B. Discussion

The Rolls-Royce Defendants argue that the Lease Agreement contains a valid and fully enforceable arbitration clause that allows them to compel arbitration. Specifically, they argue that the Rolls-Royce Defendants are third-party beneficiaries of the Lease Agreement. A non-signatory who is an intended third-party beneficiary of an arbitration agreement has the right to enforce the arbitration agreement. Code Civ. Proc., § 1559; *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006). To enforce an arbitration agreement as a non-signatory, third-party beneficiary, a party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. Courts have held that a third party need not be named but need only be "more than incidentally benefitted by the agreement." *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69, 145 Cal. Rptr. 448 (Ct. App. 1978).

This arbitration clause in the Lease Agreement, by its express terms, applies to claims relating to the "condition of this Vehicle" or arising out of any relationship, "including any such relationship with third parties who do not sign this Lease." Lease Agreement ¶ 41. The arbitration clause includes any claims against affiliates of the dealership and their assignee, Financial Services Vehicle Trust ("FSVT"), as identified and detailed in Sections 2 and 20 of the Lease Agreement. Rolls-Royce Defendants are all affiliates of FSVT. Declaration of Travis Brown in Support of Defendant's Motion to Compel Arbitration and Stay of Action ("Brown Decl.") ¶¶ 6-8.

The Lease Agreement also contemplates that Rolls-Royce provides the warranty covering the condition of the Vehicle. Rolls-Royce is, accordingly, an intended third-party beneficiary of

**CASE NO.: 5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
12

1  the arbitration provision because it falls within the class of persons or entities for whom the

2  arbitration provision was intended.  *Bos. Telecommunications Grp., Inc. v. Deloitte Touche*

3  *Tohmatsu*, 278 F. Supp. 2d 1041 (N.D. Cal. 2003), *aff'd,* 249 F. App'x 534 (9th Cir. 2007)

4  (allowing nonsignatory to compel arbitration because the agreement contemplated that

5  nonsignatory's involvement in business*); see also Geier v. m-Qube Inc.*, *Sherer v. Green Tree*

6  *Servicing LLC*, 548 F.3d 379, 382 (5th Cir. 2008), 382 (9th Cir. 2016) (finding signatory's

7  agreement to arbitrate any claims arising from "the relationships which result from th[e]

8  [a]greement" sufficient to permit nonsignatory to compel arbitration).  The Rolls-Royce

9  Defendants, therefore, have the right to enforce the arbitration agreement as third-party

10  beneficiaries of the Lease Agreement.  *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th

11  625, 636, 68 Cal. Rptr. 2d 167 (1997) (allowing former employer to compel claims against it to

12  arbitration as a third- party beneficiary).

13        Plaintiff does not dispute that the arbitration clause is valid and enforceable, or that Rolls-

14  Royce Defendants are permitted to compel arbitration as third-party beneficiaries under the Lease

15  Agreement.  Rather, Plaintiff argues that Rolls-Royce Defendants waived their right to arbitrate by

16  failing to pay arbitration fees when Plaintiff originally initiated arbitration.  The waiver of a right

17  to arbitration is disfavored, and the party asserting waiver "bears a heavy burden of proof." *Fisher*

18  *v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). The party seeking to establish

19  waiver must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts

20  inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting

21  from such inconsistent acts." *Id.*; *see also Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-

22  WHO, 2020 WL 6787135, at *2 (N.D. Cal. Oct. 8, 2020) (same).

23        Plaintiff claims that Gold Coast and Mr. Perillo failed to pay arbitration fees to the AAA.

24  Plaintiff points to the AAA Letter, which indicates that "[p]rior to the filing of this arbitration,

25  the business failed to comply with the AAA's policies regarding consumer claims. . . . including the

26  Costs of Arbitration."  AAA Letter at 1.  The AAA Letter does not explain which entity failed to

27  comply with its policies or how, stating only that it "must decline to administer this claim and any

28  **CASE NO.: 5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
13

other claims between [Gold Coast] and its consumers at this time." *Id.* According to Defendants Gold Coast and Mr. Perillo, the AAA's declination resulted from an administrative matter in a separate, unrelated case. Gold Coast and Mr. Perillo also attach documents to their Reply in support of their Motion indicating that the administrative issue has been resolved and that the AAA is prepared to arbitrate the case. Thus, it is not clear that Gold Coast or Mr. Perillo waived their rights to compel arbitration, but even if they did, Plaintiff fails to explain how that alleged waiver is attributable to the Rolls-Royce Defendants. The AAA Letter is addressed to Plaintiff's counsel and Gold Coast's former counsel, not to the Rolls-Royce Defendants' counsel. The Letter does not mention Rolls-Royce, RRFS, or BMW FS in any way. Plaintiff argues only that as the alleged "assignee," Rolls-Royce "stand[] in the shoes" of their co-Defendants. *See* Opp. at 1-3. Plaintiff cites no case law to support this proposition. Finally, Plaintiff raises no arguments regarding potential prejudice resulting from Defendants' alleged failure to pay AAA fees.

The Court finds that Plaintiff failed to demonstrate that the Rolls-Royce Defendants waived their right to compel arbitration. Thus, the Court GRANTS Rolls-Royce Defendants' Motion to Compel.

### IV.     Conclusion

For the reasons stated above, the Court GRANTS the Gold Coast Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, GRANTS the Rolls-Royce Defendants' Motion to Compel Arbitration, and STAYS this action pending arbitration. The parties shall file a joint status report within fourteen days of the resolution of arbitration proceedings.

**IT IS SO ORDERED.**

Dated:  May 10, 2021

EDWARD J. DAVILA
United States District Judge

**CASE NO.: 5:20-CV-07724-EJD**
ORDER GRANTING MOTION TO DISMISS AND MOTION TO COMPEL
14